In Propia Personam(s)
Mitchell E. Bouyer,l Attorney In Fact for
The Man on soil and Majority Age and
Martha Elena Bouyer: Attorneys In Fact for
The Women on soil and Majority Age
c/o 88 Beatrice Road
Brisbane, California [94005]
(650) 245-7445

**FILED**

2010 JUL 30 A 10: 50

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**RS**

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

CV 10 3351

**MITCHELL E. BOUYER &
MARTHA ELENA BOUYER**

CASE NUMBER:

**VERIFIED COMPLAINT**

Plaintiff(s)

v.

INDYMAC BANK, dba  HSBC BANK
USA, NATIONAL ASSOCIATION AS TRUSTEE
FOR BCAP 2008-INI/INDYMAC FEDERAL
BANK FSB/NDEx WEST, LLC, MERS, Unknown
Business Entity and Does 1 through 10,

And all persons unknown, claiming any legal or
Equitable right, title, estate, lien or interest in
the property described in the complaint adverse
to plaintiff's title, or any cloud upon plaintiff's
title theretof.

Defendant(s)

1. Wrongful Foreclosure and Violation
   Of Common Law Lien/Preservation
   Of Interest;
2. Violation of Right To Cancel TILA
   226.23
3. Cancellation of Illegal Foreclosure,
   Foreclosure Sale, Trustee's Deed &
   Notice of Default Deed &
   Cancellation of Recorded Trust
   Deeds previously rendered Void
   automatically by operation of Law;
4. Temporary Restraining Order,
   Preliminary & Permanent Injunction.
   STAY OF BENCH TRIAL
   UNLAWFUL DETAINER CASE
   NO.
5. Violations of Fair Debt Collection
   Practice Act;
6. Violations of Uniform Commercial
   Code;
7. Violation of Real Estate Settlement
   Procedure Act;
8. Quite Title

Plaintiff States The Claim For Which
Relief Can Be Granted Pursuant To:
Cv.P. Rule 12(b)(6)
Honorable:
**Date**
**Time:**
**Court Room:**

BY:  SPECIAL APPEARNACE

1   COMES NOW, Mitchell E. Bouyer and Martha E. Bouyer, (hereinafter Plaintiffs) By: Special

2   Appearance, with General Special Imparlance, one of the free inhabitants of California, the land, the

3   Sovereign spoken of in Yick Wo vs. Hopkins, in this court of record, and demanding jury trail pursuant

4   to fact, Statute, the Constitution for the United States, the Constitution for California, Plaintiffs a non-

5

6   corporate entity, as agents individually MITCHELL E. BOUYER/ MARTHA E. BOUYER, a

7   corporate entity defined as a United States Vessel (hereinafter Respondents), appearing specially, not

8   generally, by special rules, "Restricted Appearance," in the original, in the alternative, as a matter of

9   right and privilege, to allege rights under the California Constitution, and the United States

10  Constitution, by verified oath and solemn affirmation of complaint, pursuant to special rules,

11

12  exercising Plaintiffs' procedural due process.

13  PLAINTFF ALLEGES AS FOLLOWS:

14                  **THE NATURE OF PREDATORY LENDING**

15  The United States Department of Housing and Urban Development ("HUD") has defined predatory
16  lending as "involving deception or fraud, manipulation of borrowers through aggressive sales tactics,
    or taking unfair advantage of borrower's lack of understanding about loan terms." *Curbing Predatory*
17  *Home Mortgage Lending* (June 2000). (HUD Report, at 1) According to HUD,

18  "[t]hese practices are often combined with loan terms that, alone or in combination,, are abusive or
19  make the borrower(s) more vulnerable to abusive practices." *Id.*

20  HUD and the United States General Accounting Office ("GOA") have identified various lending

21  Practices as "predatory," including:

22          (a)     engaging in aggressive, high pressure, and/or misleading sales tactics;
23
            (b)     lending without regard to borrowers' ability to repay;
23
25          (c)     imposing excessive prepayment penalties that make prepayment difficult

26                  if not impossible;

27          (d)     offering to refinance borrowers' existing debt on more favorable terms and

28                  then, at closing, presenting loan documents with high interest rates, points

                    and other charges than were originally disclosed ("bait and switch)

WRONGFUL FORECLOSURE, COMMON LAW VIOLATION, VIOL, QUITE TITLE

page 2

(e) failing to make accurate disclosures of points, prepayment penalties, interest rates, annual percentage rates, monthly payments, total loan amounts, and third-party costs;

(f) falsifying loan documents, including loan applications;

(g) charging excessive fees, points, and interest rates unrelated to borrowers' credit/risk profile ("packing");

(h) misleading borrowers about their credit/risk profile to steer borrowers to high cost loans not justified by borrowers' true credit/risk profile;

(i) making secured loans in amounts so high in relation to the value of borrowers' property such that the resulting debt-to-value ratio traps borrowers into a loan;

(j) inflating or falsifying property appraisals to justify the amount of loans. HUD Report, at 2; *Federal and State Agencies Face Challenges in Combating Predatory Lending* (January 2004, GAO Report at 3-4, 18-19);

(k) making loans based on the equity in borrowers' homes, whether or not borrowers have the ability to make payments. ("equity stripping.")

- **Plaintiff is informed and believes and thereon alleges** Defendants engaged in similar predatory practices in connection with the loans made to Plaintiff.

o **Plaintiff is informed and believes and thereon alleges** that the sale of borrowers' loans from an original lender into the secondary market was not disclosed to borrowers, creating a Security Instrument.

o **Plaintiff is informed and believes and thereon alleges** the loan made to me by Defendants was sold into the secondary mortgage market, without my knowledge, in the manner alleged above, and was not recorded or assigned on title, which it must, by law, be in the State of **California**

o **Plaintiff is informed and believes and thereon alleges** that no such Assignment has ever been produced to the Plaintiffs, and Defendant has failed to prove or even take the position that it is the holder of all rights under the Note, which is the

WRONGFUL FORECLOSURE, COMMON LAW VIOLATION, VIOL , QUITE TITLE

instrument of indebtedness which would permit the legal holder thereof to declare a default which would trigger a foreclosure.

o **Plaintiff is informed and believes and thereon alleges** that "FIRST NLC FINANCIAL SERVICES, LLC, DBA THE LENDING CENTER" is not in possession of the original Note and do not have standing to have Arch Bay Holdings LLC act on their behalf and is legally precluded from foreclosing on the Property unless and until it can demonstrate full legal standing to do so by producing the note with the proper "assignment".

o **Plaintiff is informed and believes and thereon alleges that a**s a result of the TILA rescission Notice (right to cancel), Plaintiff remains the lawful owner with all rights, title and interest in and to the Property; **The Trust Deed was and remains automatically null and void by operation of law; and Defendants have no legal right, title or interest in and to the purported Trust Deed of record against the Property.** Under the provisions of TILA and Reg Z, upon issuance of the TILA Rescission Notice, all obligation of Plaintiff to make any payments under the Loan were automatically terminated by operation of law. Section 226.15(d) of TILA (Reg Z). It is required, **plaintiff is entitled to the issuance of a temporary restraining order, a preliminary injunction, and a permanent injunction restraining and enjoining defendants, and each of them, from asserting or attempting to assert, any interest in or ownership of the property, transferring, or attempting to transfer, any purported interest in the property, and maintaining or proceeding with any action in connection with the property.**

o *IRREPARABLE LOSS TO THE PLAINTIFFS WILL RESULT IF THE EMERGENCY RELIEF REQUESTED HEREIN IS NOT GRANTED IMMEDIATELY AND UNDER THE CIRCUMSTANCES WHERE THERE IS NO HARM TO DEFENDANT WITH THE GRANTING OF THE REQUESTED RELIEF, NO BOND SHOULD BE REQUIRED AS A PREREQUISITE TO THE GRANTING OF THE RELIEF REQUESTED HEREIN AS THERE ARE NO COSTS*

WRONGFUL FORECLOSURE, COMMON LAW VIOLATION, VIOL , QUITE TITLE

1
2
3
4

*OR OTHER DAMAGES WHICH COULD BE CONTEMPLATED ON THE PART*
*OF DEFENDANT WITH THE GRANTING OF THE REQUESTED RELIEF FOR*
*WHICH A BOND WOULD OTHERWISE BE NECESSARY.*

5

**DEFINITIONS:**

6

As used in this Complaint, the following definitions shall apply (the "Definitions"):

7
8

(a). The term "Nonjudicial Foreclosure Statutes" means the statutes of the State of California governing nonjudicial Foreclosures of real property secured loans.

9
10
11

(b). The "TILA" means the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j, as amended. TILA, which took effect on July 1, 1969, permitting consumers to rescind certain transactions that involve their principal dwellings.

12
13
14
15

(c). The term "HOEPA" means the Home Ownership and Equity Protection Act of 1994 which, Inter alia, amended TILA by adding Section 129 of TILA, 15 U.S.C. § 1639, and IS implemented by, inter alia, Sections 226.31 and 226.32 of Regulation Z, 12 C.F.R. §§ 226.31 and 226.32. HOEPA, which took effect on October 1, 1995, prohibiting the use of certain loan terms, and barring specified practices.

16
17
18

(d). The term "HOEPA mortgage loan" means a consumer credit transaction consummated on or after October 1, 1995, that is secured by the consumer's principal dwelling; which is covered by HOEPA, pursuant to Section 129 of TILA, 15 U.S.C. § 1639, and Section 226.32 of Regulation Z, 12 C.F.R. § 226.32.

19
20
21

(e). The term "Regulation Z" means the regulation the FRB promulgated to implement TILA and HOEPA, 12 C.F.R. 226, as amended. The term also includes the FRB Official Staff Commentary on Regulation Z, 12 C.F.R. 226, Supp. 1, as amended.

22
23
24
25

(f) The term "**FDCPA**" means the FEDERAL DEBT COLLECTIONS PRACTICE ACT. FDCPA (15 U.S.C. §1692 et seq.) and the term **California** ; Rosenthal FDCPA (Civil Code § 1788.17).

26
27

(g) The term "**FIRST NLC FINANCIAL SERVICES, LLC, DBA THE LENDING CENTER**" means alleged lender.

28

1    (i)  The term "RESPA" means REAL ESTATE SETTLEMENT PRACTICE
          ACT,
2

3    Section 6 of RESPA 12 USC S2605.

4    A.   PARTIES AND JURISDICTION

5    1.   Plaintiffs are of majority age and are residents of Unincorporated county
          of San
6         Mateo, Republic of California residing in their home APN# 007-501-010-

7    8.

8    2.   Defendants HSBC BANK USA, NATIONAL ASSOCIATION AS
          TRUSTEE FOR BCAP 2008-INI/INDYMAC FEDERAL BANK FSB
9         NDEx WEST, LLC is now, and at all relevant times mentioned herein has
10        been, Defendant HSBC BANK USA, NATIONAL ASSOCIATION AS
          TRUSTEE FOR BCAP 2008-INI/INDYMAC FEDERAL BANK FSB
11        NDEx WEST, LLC is a foreign corporation organized under the laws of
          the State of Texas, Defendant HSBC BANK USA, NATIONAL
12        ASSOCIATION AS TRUSTEE FOR BCAP 2008-INI/INDYMAC
13        FEDERAL BANK FSB NDEx WEST, LLC is in connection with
          a non-judicial foreclosure proceeding as to the Property having a place of
14        business in Unincorporated county of San Mateo, Republic of California,

15        Defendant HSBC BANK USA, NATIONAL ASSOCIATION AS
16        TRUSTEE FOR BCAP 2008-INI/INDYMAC FEDERAL BANK
          FSB NDEx WEST, LLC, has no legal interest in either the mortgage or
17        the
          Note the subject of this action. Defendant and its successors and/or
18        assigns
19        NDEx West, LLC having a place of business in Texas which purportedly
          acquired title to property. And acquired property at the illegal foreclosure
20        trustee's sale as set forth.

21   2.   Plaintiff is ignorant of the true names and capacities of Defendants sued
          Herein as DOES 1-20, inclusive, and is informed and believes, and
22
     thereupon
23        Alleges that, the Doe Defendants were participants in the actions and
          Conduct set forth hereinbelow and were responsible for the injuries and
23        Damages to Plaintiffs set forth herein, and therefore sues these Defendants
          By such fictitious names. Plaintiff will seek leave of the Court to amend
25        This complaint to allege their true names and capacities when ascertained.

26   PLAINTIFFS ARE INFORMED AND BELIEVES, AND THEREUPON FURTHER
27   ALLEGES

28   THAT:

5. Each of the Defendants named in this complaint was an agent, employee, co-venturer, partner, and/or officer of every other named Defendant, and was acting within the course and scope of such agency and/or employment in taking the actions as hereinafter alleged, with the knowledge and consent of their principal(s) and/or employer(s).

## STATEMENT OF FACTS
## COMMON TO ALL CAUSES OF ACTION
### THE WRONGFUL AND ILLEGAL FORECLOSURE OF PLAINTIFFS HOME CONDUCTED IN VIOLATION OF TILA, HOEPA, REG Z AND THE CALIFORNIA NONJUDICIAL FORECLOSURE STATUTES

6. Plaintiff refinanced the home pursuant to a consumer loan evidenced by Trust secured Promissory Notes against Plaintiffs residence (the **"Loan(s)", Note(s)"** and **"Trust Deed(s)")**, which Loan(s). Note(s) & Trust Deed(s) were held by Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB NDEx WEST, LLC.

7. The Loans, Notes & Trust Deeds were at all times subject to the provisions of TILA HOEPA and Reg Z as trust deed secured refinance consumer loans in connection with Plaintiffs Home.

8. Section 1635 of TILA (15 U.S.C. § 1635), otherwise known as Title 15 of the United States Code, Commerce And Trade, Chapter 41, Consumer Credit Protection, Subchapter 1, Consumer Credit Cost Disclosure, Part B, Credit Transactions, states in pertinent part:

**"Sec. 1635. Right of rescission as to certain transactions**

(a) Disclosure of obligor's right to rescind

Except as otherwise provided in this section, in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to **rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.**

(b) **Return of money or property following rescission**

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the Obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, down payment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall lender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests In the obligor without obligation on his part to pay for it.

(f) Time limit for exercise of right

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor, except that if (1) any agency empowered to enforce the provisions of this subchapter institutes a proceeding to enforce the provisions of this section within three years after the date of consummation of the transaction, (2) such agency finds a violation of this section, and (3) the obligor's right to rescind is based in whole or in part on any matter involved in such proceeding, then the obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the earlier sale of the property, or upon the expiration of one year following the conclusion of the proceeding, or any judicial review or period for judicial review thereof, whichever is later.

(i) Rescission rights in Foreclosure

(1) In general

Notwithstanding section 1649 of this title, and subject to the time period provided in subsection (1) of this section, in addition to any other right of rescission available under this section for a transaction, after the initiation of any judicial or nonjudicial Foreclosure process on the primary dwelling of an obligor securing an extension of credit, the obligor shall have a right to rescind the transaction equivalent to other rescission rights provided by this section, if-

(A) a mortgage broker fee is not included in the finance charge in accordance with the laws and regulations in effect at the time the consumer credit transaction was consummated; or

(B) the form of notice of rescission for the transaction is not the appropriate form of written notice published and adopted by the Board or a comparable written notice, and otherwise complied with all the requirements of this section regarding notice.

### (2) Tolerance for disclosures

Notwithstanding section 1605(f) of this title, and subject to the time period provided in subsection (f) of this section, for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial Foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than $35 or is greater than the amount required to be disclosed under this subchapter.

### (3) Right of recoupment under State law

Nothing in this subsection affects a consumer's right of rescission in recoupment under State law.

### 4) Applicability

This subsection shall apply to all consumer credit transactions in existence or consummated on or after September 30, 1995.

9. Rescission of the Loans, Notes & Trust Deeds under TILA and Reg Z is governed by Section 226.15 of TILA (Reg Z) which states in pertinent part:

"§ 226.15 Right of rescission.

(a) *Consumer's Right To Rescind,*

(1)(i) Except as provided in paragraph (a)(1)(11) of this section, in a credit plan in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be to the security interest shall have the right to rescind: each credit extension made under the plan: the plan when the plan is owned: a security interest when added or increased to secure an existing plan; and the increase when a credit limit on the plan is increased.

(ii) As provided in § 125(e) of the act, the consumer does not have the right to rescind each credit extension made under the plan If such extension is made in accordance with a previously established credit limit for the plan.

(2) To exercise the right to rescind, the consumer shall notify creditor of the rescission by mail, telegram, or other means of written communication. Notice is considered   given when or when filed for telegraphic transmission, or, if sent by other means, when delivered to the creditors designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following the occurrence described in paragraph (a)(1) of this section that gave rise to the right of rescission, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice and material disclosures any not delivered, the right to rescind shall expire three years after the occurrence giving rise to the right of rescission, or upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with § 125(f) of the act.

(4) When more than one consumer has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

....................................................................

(d) *Effects Of Rescission.*

(1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge.

(2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has Been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option. tender of property may be made at the location of the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value. At the consumer's option. tender of property may be made at the location of the property or at the consumer's residence.  If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation."

[Bold & Underline Added For Emphasis)

10. In full compliance with the requirements for Rescission under TILA and Reg Z, and within the three year period following the origination date of the Loans, as required by TILA and Reg Z, Plaintiff caused to be mailed to Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL , a Notice of Rescission, stating:

11. "This letter is to notify you that I hereby rescind and cancel the above specified Loans, Notes & Trust Deeds undertaken in connection with the above specified Property, pursuant to and for violations of and non-compliance with the provisions of the Truth in Lending Act, 15 U.S.C. §§ 1601-1666j ("TILA"), and the Home Ownership and Equity Protection Act of 1994 ("HOEPA") which, interalia, amended TILA by adding Section 129 of TILA, 15 U.S.C. § 1639, and is implemented by, interalia, Sections 226.31 and 226.32 of U. S. Treasury Regulation Z, 12 C.F.R. §§ 226.31 of HOEPA, and Treasury Regulation Z.

Demand is hereby made that within twenty-five days, you perform all of your required obligations pursuant to this Notice Of Rescission as required and mandated under the above cited statutes. Concurrently herewith, an amount equal to the original principal amount of the Loans has been delivered to the Tender Trustee set forth herein for your benefit and account (the "Tender"). You may take possession of the Tender from the Tender Trustee, any time during the next twenty-five days, upon delivery to the Tender Trustee for my benefit and account, the Trust Deed Reconveyances and the reimbursement Monetary Payments required and mandated by TILA, HOEPA and Reg Z."

(all of the preceding being referred to as the "TILA Rescission Notice".)

12. Under the mandatory requirements of TILA, HOEPA and Reg Z, Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB NDEx WEST, LLC,

was required by law to deliver to Plaintiff, within twenty days of the date of the TILA Rescission

NOTICE:

A). A monetary payment equal to the sum of all charges, costs and interest paid by or charged to Plaintiff in connection with the Loan(s), Note(s) and Trust Deed(s) (the "Monetary Payment"); and

B). A reconveyance of the Trust Deed(s) (the "Trust Deed Reconveyance(s)").

all of the preceding being collectively referred to herein as "**FIRST NLC FINANCIAL SERVICES, LLC, DBA THE LENDING CENTER**" TILA, HOEPA & Reg Z Obligations".

13. Rescission Balance/Tender of payment in the amount of $475,000.00 was presented to HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB NDEx WEST, LLC As such, Plaintiff has a right to cancel under TILA.  Since,  HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FED.  do not take possession of the money or property within 20 calendar days of plaintiffs offer, Plaintiffs may keep home without not further  obligation. HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL   BANK FSB NDEx WEST, LLC

14. The twenty day statutory period for Defendant to fulfill " HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL TILA, HOEPA and Reg Z Obligations, and to take possession of the Tender of the Original Loan Principal, expired without any action being taken by Defendant " HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB NDEx WEST, LLC

15. In accordance with the mandatory provisions of TILA and Reg Z:

"**When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice or rescission, the creditor shall return** to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. **Tender shall be made at the location of the Property or at the residence of the obligor, at the option of the obligor. If the creditor aloes not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for It.**" [Section 1635 of TILA (15 U.S.C. § 1635)]

[Bold & Underline Added For Emphasis]

17. Plaintiff fully complied with all of the provisions of TILA, HOEPA and Reg Z for Rescission under TILA, HOEPA and Reg Z.

18. Defendant ʹ      HSBC BANK USA NATIONAL ASSOCIATION
                    dba INDYMAC FEDERAL BANK FSB

∴ NDEx WEST, LLC  **failed to comply with and continues to fail to comply with its
mandatory and non-negotiable obligations under TILA, HOEPA and Reg Z, pursuant
to such TILA Rescission (the "Defendant TILA Rescission Failures"):**

> **A) Defendant did not take possession of the Tender within twenty days after the
> Tender of the original amounts of the Loans by Plaintiff; and**

> **B) Defendant did not deliver to Plaintiff within twenty days after the TILA
> Rescission Notice, the Monetary Payment; and**

> **C) Defendant did not, within twenty days after the TILA Rescission Notice, "take
> any action necessary to reflect the termination of the security interest"**

**19. Under TILA, HOEPA and Reg Z, the Trust Deeds were automatically rendered
void by operation of law upon issuance of the TILA Rescission Notice and Plaintiff
was at all times entitled to:**

> **A) The Monetary Payment; and**

> **B) Termination of the security interest in the Home by cancellation of the Trust
> Deeds providing any such security interest**

20. Rather than complying with Defendant's mandatory obligations under TILA, and Reg Z for
the TILA Rescission, instead, Defendant illegally and in violation of such statutes which rendered
the Trust Deeds automatically void by operation of law, commenced Foreclosure of the Notes &
Trust Deeds on the Home (the "Foreclosure") by causing a Notice of Default ("NOD") to be
issued, and thereafter causing a Notice of Trustee's Sale ("NOS") to be issued have the right to
cause the Home to be sold at a Foreclosure Sale (the "Foreclosure Sale")

21. In further continuing violations of TILA, HOEPA and Reg Z, and with full knowledge
that any right or interest of Defendant in and to the Home and/or the Trust Deeds, was null and void
by operation of law upon issuance of the TILA Rescission Notice, Defendant nonetheless wrongly
and illegally, in violation of the mandatory provisions of TILA, HOEPA and Reg Z, caused the
Home to be sold at the Foreclosure Sale and caused a purported Trustee's Deed to be issued to

Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL Bank, which purported to transfer all right, title and interest in and to the Home to Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL (the "Trustee's Deed").

22. **The purported Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed were all null and void by operation of law, in that, pursuant to the mandatory provisions of TILA, HOEPA and Reg Z, any interest of Defendant in and to the Home and Trust Deeds were null and void immediately by operation of law, upon issuance and mailing of the TILA Rescission Notice:**

> **"(b) Return of money or *property* following rescission**

> **When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest Given by the obligor, including any such Interest arising by operation of law, becomes void upon such a rescission.' Section 1635 of TILA (15 U.S.C. § 1635)**

> **[Bold & Underline Added For Emphasis]**

**and Defendant had no legal standing or right to commence, maintain and/or complete a nonjudicial Foreclosure and Foreclosure Sale of the Home under the State Nonjudicial Foreclosure Statutes.**

23. **As a result, any such purported NOD, NOS, Foreclosure, Foreclosure Sale and Trustee's Deed,** were also illegal and prohibited by the mandatory provisions of TILA, HOEPA, Reg Z, and the State Nonjudicial Foreclosure Statutes, and were therefore, equally null and void as a matter of law, ab initio.

24. Additionally, Defendant purported to conduct the Foreclosure and Foreclosure Sale pursuant to the State Nonjudicial Foreclosure Statutes.

25. However, such purported Foreclosure and Foreclosure Sale was not conducted in compliance with, and violated the provisions of, the Nonjudicial Foreclosure Statutes, as follows

(the "Nonjudicial Foreclosure Statute Violations"):

A) Any interest of Defendant in and to either the Home or the Trust Deeds were null and void upon issuance of the **TILA** Rescission Notice, by operation of law, and there was no Trust

B) No copy of the NOD or NOS was sent to or received by Plaintiff, by mail, addressed to Plaintiff at Plaintiff's Home address where Plaintiff resides and has continued to reside.

C) No copy of the NOD or NOS was ever posted on the Home.

D) Plaintiff repeatedly contacted Defendant by telephone (the **"Telephone Calls"**) and by letter (the **"Letters"**), requesting and demanding an itemized accounting of all charges and amounts alleged to be due and owing under the Loans (the **"Accounting Statement"**) and for a statement of the amount required to bring the Loans current and out of Foreclosure (the **"Default Cure Statement"**).

26. Throughout the Foreclosure, Defendant refused and failed, and continues to refuse and fail to provide Plaintiff with the repeatedly requested Accounting Statement and Default Cure Statement.

27. Plaintiff is informed and believes, and thereupon alleges that Defendant added false; fraudulent and previously undisclosed fees, charges and costs totaling in excess of $50,000 to the amount alleged to be due at the Foreclosure Sale, and that the total amount stated to be due in the NOS was willfully, intentionally and knowingly overstated by in excess of $50,000, all of the **preceding collectively referred to herein as the "Undisclosed & Fraudulent Charges"**

28. The full extent of the Undisclosed & Fraudulent Charges were never disclosed to Plaintiff in any of the Loans, Notes or Trust Deeds documents.

## FIRST CAUSE OF ACTION

### WRONGFUL FORECLOSURE AND FLAGRANT VIOLATION OF COMMERCIAL LAW

### Against All Defendants

29. Plaintiff incorporates paragraphs 1 through 28 as if fully set forth herein.

30. Defendants knew or should have known that pursuant to the mandatory provisions of TILA, HOEPA and Reg Z, the Trust Deeds were rendered null and void for all purposes, by operation of law, by the TILA Rescission Notice, and there was no Trust Deed legally in existence upon which to foreclose and that Defendants were legally barred and prohibited from conducting a nonjudicial Foreclosure of the Loans, Notes and Trust Deeds, and were legally barred and prohibited from conducting the purported Foreclosure Sale and causing issuance of the Trustee's Deed.

31. Foreclosure and committed the Nonjudicial Foreclosure Statutes Violations and refused to comply with the mandatory requirements of TILA, HOEPA and Reg Z as set forth herein, including but not limited to, delivering the Monetary Payment and the Trust Deed Reconveyances to Plaintiff.

32. As a result, the preceding, the purported Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed were at all times null and void ab initio and of no legal effect whatsoever, and Defendants wrongfully foreclosed on the Home.

33. As a direct and proximate result of the above-described actions and conduct constituting WRONGFUL FORECLOSURE, Plaintiff is entitled to judgment against Defendants for Wrongful Foreclosure, and for judgment canceling, setting aside and vacating the Foreclosure, Foreclosure Sale and Foreclosure Trustee's Deed.

34. Plaintiff timely and fully complied with all of the provisions of TILA, HOEPA and Reg Z for Rescission of the Loans, Notes, and Trust Deeds.

35. Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC BANK FSB NDEx WEST failed to comply with the mandatory requirements of TILA, HOEPA and Reg Z in response to the TILA Rescission Notice.

36. The Loans, Notes and Trust Deeds were rendered void by operation of law pursuant to the TILA Rescission Notice under TILA, HOEPA and Reg Z, and there was no Trust Deed legally in existence upon which Defendant ' HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL' could foreclose.

37. As a result of the preceding, the purported Foreclosure, NOD, NOS,

Foreclosure Sale and Trustee's Deed were at all times null and void by

Operation of law and of no legal effect.

38. As a direct and proximate result of the preceding, Plaintiffs are entitled

To judgment against Defendants, reversing, canceling, setting aside

And vacating the purported Foreclosure, NOD, NOS, Foreclosure

Sale and Trustee's Deed.

### SECOND CAUSE OF ACTION

### CANCELLATION OF RECORDED TRUST DEEDS

### PREVISOULY RENDERED VOID AUTOMATICALLY BY OPERATION OF LAW

### Against All Defendants

39. Plaintiffs incorporates paragraphs 1 through 38 as if fully set forth.

40. Plaintiffs timely and fully complied with all of the provisions of TILA, HOEPA and

Reg Z for Recession of the Loans, Notes, and Trust Deeds.

41. Defendant HSBC BANK USA NATIONAL ASSOCIATION dba

INDYMAC FEDERAL BANK FSB NDEx WEST, LLC, failed to comply with

The mandatory requirements of TILA, HOEPA and Reg Z in response to the TILA

Rescission Notice.

/// 

/// 

///

42. The Loans, Notes and Trust Deeds were rendered void by operation of law pursuant to the TILA Rescission Notice under TILA, HOEPA and Reg Z, and there was no Trust Deed legally in existence upon which Defendants could foreclose.

43. Defendant HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB committed the TILA Rescission Failures cited hereinabove.

44. As a direct and proximate result of the preceding, Plaintiff is entitled to judgment against Defendants, canceling the recorded Trust Deeds of record.

## THIRD CAUSE OF ACTION
## TEMPORARY RESTRAINING ORDER
## PRELIMINARY & PERMANENT INJUNCTION
### Against All Defendants

**45. Plaintiff incorporates paragraphs 1 through 44 as if fully set forth.**

46. The TILA Rescission Notice automatically rendered the Loan, Note & Trust Deed and required that Defendants deliver a Trust Deed Reconveyance to Plaintiff.

47. As a result of the TILA Rescission Notice, Plaintiff remains the lawful owner of al right, title and interest in and to the Property; the Trust Deed was and remains automatically null and void by operation of law; and Defendants have no legal right, title or interest in and to the purported Trust Deed of record against the Property.

48. Accordingly, Defendants should properly be restrained and enjoined as a matter of law from asserting any ownership or other legal rights or interest in and to the Property in any manner whatsoever. TILA Rescission Notice, any and all obligation of Plaintiff to make any payments under the Loan were automatically terminated by operation of law. Section 226.15 (d) of TILA (Reg Z) states in pertinent part:

**"§ 226.15 Right of rescission.**

*(d) Effects Of Rescission.*
   **(1) When a consumer rescinds a transaction, the security interest**

plying rise to the right of rescission becomes void, and the consumer shall not be liable for any amount, including any finance charge."

49. Therefore, Plaintiff is entitled to the issuance of a Temporary Restraining Order, a Preliminary Injunction, and a Permanent Injunction restraining and enjoining Defendants and each of them, and anyone acting in concert with them or for their benefit or at their request, directly or indirectly, from:

A) Asserting or attempting to assert, any interest in or ownership of the Property;

B) Transferring, or attempting to transfer, any purported interest in the Property;

C) Maintaining or proceeding with any action in connection with the Property.:

D) Making, maintaining or continuing any negative report or entry to any credit agency, including but not limited to, Experian, TransUnion and EquiFax, with respect to the Loan, Note & Trust Deed of Plaintiff.

## FOURTH CAUSE OF ACTION

## VIOLATIONS OF FAIR DEBT COLLECTIONS PRACTICES ACT

### Against All Defendants

50. Plaintiff incorporates paragraphs 1 through 49 as if fully set forth.

51. HSBC BANK USA NATIONAL ASSOCIATION dba INDYMAC FEDERAL BANK FSB and Defendants to be named later are in violation of TITLE VIII-DEBT COLLECTION PRACTICES [Fair Debt Collection Practices Act] "§ 803. Definitions [15 USC 1692a] As used in this title -- (6) The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." According to the definition above, Defendants are debt collectors and fall under the Fair Debt Collection Practices Act.

52. Defendants did not notify Plaintiff of their rights to request the alleged debt with proof it exists. Without validation of the debt and without the presence of the original instrument, the debt might stand as invalid and the enforcement of the Deed of Trust, foreclosure on the mortgage and sale of said property covered by the Deed of Trust might not have legally taken place.

53. Therefore any sale that has taken place might be an illegal, fraudulent transaction by all parties involved possibly resulting in the fraudulent conversion and fraudulent conveyance of Plaintiffs property for the unjust enrichment of Defendant's. Because the sale might have been a fraudulent transaction involving fraudulent conversion, fraudulent conveyance and unjust enrichment, Defendant is not the legal owner of the property as claimed.

54. **FDCPA Section 809. Validation of debts [15 USC 1692g] (b),** "If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the verified debt of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, is mailed to the consumer by the debt collector." So, if a creditor can't verify a debt: They are not allowed to collect the debt, They are not allowed to contact Plaintiffs about the debt, and they are also *not allowed to report it* under the Fair Credit Reporting Act (FCRA).

55. Not complying as such, Defendants violated the Fair Debt Collection Practices Act as in the context of the FDCPA § 803 Definitions "The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be *owed or due another.* Notwithstanding the exclusion provided by clause (F) of the last sentence of this paragraph...

    (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity

    (i) is incidental to a bona fide fiduciary obligation or a bona fide escrow arrangement;

    (ii) concerns a debt which was originated by such person;

    (iii) concerns a debt which was not in default at the time it was obtained by such person; or

    (iv) concerns a debt obtained by such person as a secured party in a commercial credit transaction involving the creditor.

56. The Plaintiffs requested the Defendants produce the Original Promissory Note that affords them ownership and proves them Holders in Due Course. The informed Defendants should know that they have to comply with the request as cited above in order to be in compliance with the Fair Debt Collection Practices Act, which, unless they are the creditor still holding the Promissory Note, they are bound by.

57. *Defendants are not the Holders in Due course of said Plaintiff's promissory note.*

### FIFTH CAUSE OF ACTION
### VIOLATIONS OF UNIFORM COMMERCIAL CODE
### (U.C.C)

**Against All Defendants**

**58. Plaintiff incorporates paragraphs 1 through 57 as if fully set forth.**

59. Plaintiffs alleges that Defendants are in violation of the Uniform Commercial Code (hereafter "U.C.C"). Plaintiffs is/are dealing with a Promissory Note or Note, defined by Blacks Law Dictionary [8th] Addition, as a Negotiable Instrument, which by it's nature is an agreement or contract. Hence Promissory Note, in this pleading, is synonymous with Negotiable Instrument and or instrument. U.C.C. § 3-104. NEGOTIABLE INSTRUMENT, (b) "Instrument" means a negotiable instrument."

60. Violations alleged specifically, U.C.C. § 3-501 **"PRESENTMENT, (a)** "Presentment" means a demand made by or on behalf of a person **entitled to enforce** an instrument....(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on **behalf of another person,** reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made. **(emphasis added)** Plaintiffs demanded presentment of the Promissory Note and were denied by Defendants acquiescence.

A person entitled to enforce the instrument in this case is the "Note Holder" as described in the original note and defined in U.C.0 § 3-301 **PERSON ENTITLE TO ENFORCE INSTRUMENT,** "Person entitled to enforce" an instrument means (i) **the holder of the instrument,** (ii) a non holder **in possession** of the instrument who has the rights of a holder, or (iii) a person **not in possession** of the instrument who is entitled to enforce the instrument **pursuant to Section 3-309 or 3-418(d).** A person may be a person entitled to enforce the instrument even though the person is not the owner of the

instrument or is in wrongful possession of the instrument." The (iii) section does not apply as the circumstances of said sections are not applicable, see applicable sections.

§ 3-302. **HOLDER IN DUE COURSE,** (a) Subject to subsection (c) and Section 3-106(d), "holder in due course" means the holder of an instrument if: (1) the instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and (2) the holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in Section 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in Section 3305(a).

> 61. Plaintiffs alleges that through the deceitful and fraudulent tactics employed to have the Plaintiffs agree to sign the promissory note and or contract, the Defendant recognized the Plaintiffs defense as outlined in U.C.C. § 3-305. **DEFENSES AND CLAIMS IN RECOUPMENT,** (a) Except as stated in subsection (b), the right to enforce the obligation of a party to pay an instrument is subject to the following: (1) a defense of the obligor based on (i) infancy of the obligor to the extent it is a **defense to a simple contract,** (ii) duress, lack of legal capacity, or **illegality of the transaction which,** under other law, **nullifies the obligation of the obligor,** (iii) **fraud that induced the obligor to sign the instrument** with neither knowledge nor reasonable opportunity to learn of its character or its essential terms, or (iv) discharge of the obligor in insolvency proceedings."

The following court cases demand that the lender have possession of the Plaintiffs promissory Note before Defendants can collect:

*Matter of Staff Mortgake. & Investment Corp.,* 550 F.2D 1228 [9TH] Cir. 1977) "Under the Unifonn Commercial Code the only notice sufficient to inform all interested

parties that a security interest in instruments has been perfected is actual possession by the secured party, his agent or bailee." In Re Investors & Lenders LTD 165 B.R. 389 BKRTCY D.N.J. 1994" under the New Jersey Uniform Commercial Code, a promissory note is an "instrument, security interest in which must be perfected by possession..." The servicing agent has 60 days to give defendant the owners name after it is requested, Title 12 U.S.C.A. **"servicing agents".** Therefore Plaintiffs have no contract with Defendant and therefore cannot be sued by Defendants(s). **Now Defendant claims that he is the holder in due course of the title of the home but they are not the holder of the "Note".**

62. Plaintiffs is/are requesting as to whom has the original signed, and sealed Promissory Note executed by Plaintiffs in reference to the "property", this must be answered. Therefore Plaintiffs, under the Federal Statutes, has the right to demand the location of his "Note". If in fact under CUCC 3-309(a) "a person not in possession of an instrument may enforce it only if s/he was in possession of the instrument at the time of loss of possession. *Dennis Joslin Co. v. Robinson Broadcasting Corp.* 977 F. Supp. 491 (D.D.C. 1997). Notwithstanding that *Joslin* has not been followed or approved by any court, and, indeed has been rejected by a number of courts, e.g. *Beal Bank S.S.B. v. Caddo Parish-Villas South,* 218 B.R. 851 (N.D. Tex.) aff d on other grounds, 174 F.3d 624 (5th Cir. 1998); *Bobby D. Associates v. Di Marcantonio,* 751 A.2d 673 (Pa. Super. 2000). There may be proof because of the unfulfilled request of the Plaintiffs that the defendant has the "Note" but will not accede to Plaintiffs request that they are not in possession of the "Note" by acquiescence.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT
### (RESPA)

#### Against All Defendants

63. Plaintiff incorporates paragraphs 1 through 61 as if fully set forth.

64. Plaintiffs alleges Defendant violated the Real Estate Settlement Procedures Act § 3500.21(e) **Servicers Must Respond to Borrower Inquiries** A financial institution servicer must **respond** to a **borrower's qualified written inquiry** and must take appropriate action within established time frames after receiving the inquiry. Generally, **the institution must provide written acknowledgment within twenty business days** and must take certain specified actions within sixty business days after receiving the inquiry. The inquiry must include the name and account number of the borrower and the reasons the borrower believes the account is in error. Defendants violated the provisions of California *Civil Code* Section 2932.5 by assigning, selling, and transferring Plaintiffs Note, either by way of written endorsement, allonge, or actual delivery without any recorded assignment or my knowledge thereof.

65. Plaintiffs demand of the **original promissory note** was ignored and Defendant, by acquiescence admitted to not possessing it.

## SEVENTH CAUSE OF ACTION

### (Quiet Title Against All Defendants.)

66. **Plaintiff incorporates paragraphs 1 through 64 as if fully set forth.**

67. Plaintiff is the owner in fee and in possession of and in control of the Property.

68. Plaintiff obtained fee simple title to the Property by a grant deed recorded in the Official Records of Unincorporated county of **San Mateo** ﹔ Republic of California.

69. Plaintiff is informed and believes and thereon alleges that Defendants claim an interest in the Property adverse to Plaintiff's title, pursuant to which Defendants seek to non-judicially foreclose upon the Property. The claims

of Defendants are without any right and Defendants have no right, title, estate, lien, or interest in the Property, such that any attempted non-judicial foreclosure on the Property is illegal and unlawful.

70. Plaintiff seeks a determination she holds of fee simple title to the Property free of any purported adverse claims of Defendants.

**WHEREFORE, PLAINTIFF PRAYS:**
**ON ALL CAUSES OF ACTION HEREINABOVE:**

1.) Judgment reversing and canceling the Notice of Default, Foreclosure, Notice of Trustee's Sale, Foreclosure Sale, and Trustee's Deed.

2.) Judgment canceling the Trust Deeds of record in the County Recorders Office

3.) Issuance of a Temporary Restraining Order, Preliminary Injunction, and Permanent Injunction, restraining and enjoining Defendants, and each of them, and anyone acting in concert with them or for their benefit or at their request, directly or indirectly, from:

a). Asserting or attempting to assert, any interest in or ownership of the Property;

b).. Transferring, or attempting to transfer, any purported interest in the Property;

c). Maintaining or proceeding with any action in connection with the Property, including but not limited to, any unlawful detainer action for possession.:

d). Making, maintaining or continuing any negative report or entry to any credit reporting agency, including but not limited to, Experian, TransUnion and EquixFax, with respect to the Loan, Note & Trust Deed of Plaintiff.

4) Judgment that the Foreclosure was not conducted in compliance with the Nonjudicial Foreclosure Statutes; was conducted in violation of the mandatory requirements of TILA, HOEPA and Reg Z, and was therefore wrongful; and

5) Judgment setting aside, canceling, vacating, and declaring null and void, the Notice of Default, Foreclosure, Notice of Trustee's Sale, Foreclosure Sale, and Trustee's Deed.

6) Defendant returns the GENUINE ORIGINAL PROMISSORY NOTE and ALL MONEY PAID [*by Plaintiff to Defendants, with a full disclosure of accounting of such*] to Plaintiff forthwith;

7) If Defendant is not able to return the GENUINE ORIGINAL PROMISSORY NOTE to Plaintiff forthwith then Defendant is therefore admitting to Defendant's unlawful attempt to convert real property without cause and/or right.

8) Defendant present to Plaintiff and this Court an Affidavit stipulating that Defendant has NO RIGHTS to the real property in question.

9) Defendant returns DEED and all other documents pertaining to ownership of real property in question to Plaintiff.

10) If Defendant **does not** STATE THE CLAIM UNDER PENALTY OF PERJURY that Defendant is the **CREDITOR** in this instant matter, Defendant agrees to accept Judgment by Default in favor of Plaintiff.

11) If Defendant **does** STATE THE CLAIM UNDER PENALTY OF PERJURY that Defendant is the **CREDITOR** in this instant matter, Defendant agrees to deliver acknowledgement of such forthwith to the S.E.C. and the I.R.S.

12) For cost of suit and all legal expenses and costs incurred herein, including but not limited to, attorney's fees; proof of service fees and

13) For interest according to law; and

14). For Damages in the amount of **$972,613.01 and**

15). For such other and further relief as the Court may deem just and proper.

1

VERIFICATION

2

3        I, THE UNDERSIGNED PLAINTFFS, DECLARES:

4

5        1.      I am/we are Plaintiffs in the herein specified action.

6        2.      We have read the foregoing Complaint and am familiar with the statements and
                 allegations

7   Set forth therein.

8        3.      All of the statements and allegations set forth hereinabove are true and correct of our
9                own

10  Personal knowledge, except as to those statements and allegations made under information and
11  belief, which

12  we believe to also be true and correct to the best of our knowledge.

13

14  IN WITNESS WHEREOF, I/We have signed this Verification under penalty of perjury of the laws
15  of

16  The State of California:

17  Date: 7/30 — 2010,

18

19  MITCHELL E. BOUYER, Plaintiff/Petitioner: UCC 3-402(b)(1)
    By: _Mitchell E. Bo_____
20  Autograph: Mitchell E. Bou____ lawful man,
    Real Party In Interest

21

22  MARTHA ELENA BOUYER, Plaintiff/Petitioner: UCC 3-402(b)(1)
    By: _Martha E. Bouyer_____
23  Autograph: Martha _____ Principal, lawful woman,
    Real Party In Interest

24  c/o 88 Beatrice Road, B____ California [94005]

25

26

27

28

page 27

## PROOF OF SERVICE

I, _Phillis Marie_____, hereby certified that on the $\underline{30}$ day of July, 2010, than a true and correct copy of the Verified Complaint was faxed at/and mailed via the United States Postal Services, postage prepaid, and address to:

1.  • Arturo E. Matthews, Jr. SBN 145232
    BURNETT & MATTHEWS LLP
    4675 MacArthur Couirt, Suite 1540
    Newport Beach, California 92660
    Tel: (949) 975-1980
    Fax: (949) 975-1988
    c/o: HSBC BANK USA, NATIONAL ASSOCIATION AS TRUSTEE FOR
    BCAP 2008 [INI]

③. MERS
3300 S.W. 34th Av.
Suite 101
Ocala, Florida 34474

### AND

2.  Aaron W. Brown, Agent for Beneficiary
    INDYMAC FEDERAL BANK FSB
    C/O NDEx WEST, LLC
    15000 Surveyor Boulevard, Suite 500
    Addison, Texas 75001-9013
    (866) 795-1852

(BY MAIL AND FAX) PLACE A TRUE COPY OF THE FOREGOINGDOCUMENT IN A SEALED EVELOPE ADDRESS TO EACH INTEREST PARTY, AS SET FORTH ABOVE. I PLACE EACH ENVELOPE, WITH POSTAGE THEREON FULLY PREPAID, FOR COLLECTION AND MAILING

FAX TO: Burnett + Matthews % HSBC BANK USA (949) 975 -1988
FAX TO: IndyMAc Federal Bank FSB -AARon W. Brown (972) 661-7800
Fax To: MERS (703) 748-0183      (626) 583-1370

EXECUTED ON July $\underline{30}$, 2010, AT _Brisbane___, CALIFORNIA

I DECLARE UNDER PENALTY O PERJURY UNDER THE LAWS OF THE UNITED STAES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.

UCC 3-308
UCC 2-206
UCC 207

SIGNATURE

WRONGFUL FORECLOSURE, COMMON LAW VIOLATION, VIOL, QUITE TITLE